WILLIAM D. MURPHY, Respondent, *against* ALEXANDER C. BANDERET, as Administrator &c. of Julien Banderet, Deceased, Appellant.

(Decided December 28th, 1885).

Plaintiff, who was an attorney, having acquired knowledge of an old and unclaimed deposit in a savings bank, induced the defendant, one of the next of kin of the depositor, and who was wholly irresponsible and insolvent, to procure himself to be appointed administrator ; and an agreement was entered into between them, by which plaintiff was to receive half of the fund as compensation for disclosing its existence and for necessary legal services in securing it. Defendant, however, afterwards refused to collect the money or to make the payment to plaintiff agreed upon. *Held*, that plaintiff was not entitled, upon a complaint alleging these facts, and the insolvency of defendant, and that he refused and neglected " in fraud of plaintiff's rights " to take or receive said money or to pay plaintiff, to recover a judgment against defendant for one half of the fund to be paid out of the estate.

APPEAL from an interlocutory judgment of this court overruling a demurrer to a complaint.

The facts are stated in the opinion.

*Jacob A. Gross*, for appellant.

*George W. Miller*, for respondent.

J. F. DALY, J.—It appears from the statement of the cause of action in the complaint that the plaintiff was an attorney and counsellor at law; that there came to his knowledge the existence of an unclaimed deposit in a savings bank in the city of New York, which had been made some forty years previously by one Julien Banderet, since deceased; that by stating to defendant, Alexander C. Banderet, who was the nearest and only next of kin, in this country, of deceased, that he had knowledge of such a deposit, he " influenced and induced " defendant to take out letters of administration in this county upon the estate of deceased; that thereupon, after such letters were issued to defendant, plaintiff and defendant entered into an agreement in writing, by which it was agreed that plaintiff should communicate to defendant the whereabouts of the fund and such facts as would enable defendant to collect the money, and would also render any necessary legal services in col lecting the same; and plaintiff was to be paid or allowed by defendant immediately upon the receipt of the money " a certain percentage thereon; " the plaintiff then informed defendant of the deposit, went with him to consult counsel, presented his claim to the bank, and finally after some weeks got it admitted; that all the services were rendered and information furnished by plaintiff to defendant as administrator " for the sole creation of the estate of said Julien Banderet, deceased, and the use and benefit thereof; " that defendant, in fraud of plaintiff's rights, refuses to receive the money from the bank or pay plaintiff; that defendant is personally irresponsible and insolvent, and possessed of

no property out of which a judgment could be collected; and plaintiff asks judgment against defendant as administrator for $500, or half the sum payable by the bank to defendant as administrator, and that the same be paid out of the said funds of the estate. Defendant demurs that it appears on the face of the complaint that it does not state facts sufficient to constitute a cause of action.

The enforcement of a contract of such a character would ordinarily be sought against the defendant individually, and not as administrator, but acting upon the suggestion contained in the opinion of Chief Justice HUNT in *Ferrin* v. *Myrick* (41 N. Y. 325), that " in case of the fraud or insolvency of the executor, an equitable cause of action would probably be thereby created against the estate, which could be enforced in behalf of the creditor, and which would enable him to maintain a claim against the estate directly," and the observation to the same effect in the opinion of Justice ALLEN in *Austin* v. *Munro* (47 N. Y. 367), the plaintiff has set up in his complaint the insolvency of the administrator, and that the latter refuses to receive the fund in bank in order to defraud plaintiff out of his half. The question is whether the complaint as a whole, taking its other averments together with these allegations of insolvency and fraud, contains a statement, which, if proved, entitles plaintiff to the equitable interposition of the court, in order to relieve him from the probable loss which would ensue, if he were left to his action upon his contract against the administrator individually. I think the answer must be in the negative. The claim of the plaintiff amounts to this: he, being a lawyer, and having acquired knowledge of an old, unclaimed deposit in a savings bank, in order to turn that knowledge to account, and procure some person with whom he may arrange for a divison of the money, induces one of the next of kin of the depositors, a person wholly irresponsible and insolvent, to get himself appointed administrator; then arranges with such administrator for half the fund as compensation for disclosing its whereabouts, and contracting to perform the necessary legal ser-

vices in securing it, and when the administrator afterwards hesitates and refuses to touch the money and make the agreed division, charges him with his insolvency and "fraud," and asks the court in equity to take the fund and make the division with him.

A valid contract for services rendered to an administrator in recovering the estate or any part of it, would, as I have said, be enforceable at law only against the administrator personally. The resort to equity is permitted on the ground that a person who, in good faith, has rendered meritorious service to the estate, should not lose the compensation he has earned, through the insolvency or the fraud of the administrator. The equity jurisdiction is admitted from the necessity of the case. But here is a plaintiff who has not acted in good faith, and who has moreover created the necessity he now pleads. He set in motion the machinery of administration to get a share of this fund, induced an irresponsible person to take the office of administrator, attempted to use him as a cat's-paw, and when the latter hesitates to carry out the scheme, denounces him as an insolvent and applies to a court of equity, in the hope that it will be less scrupulous than the administrator. This is the whole case : as to the charge of "fraud," the refusal of the administrator to draw the money and pay the plaintiff appears to be the first awakening of the official conscience, and deserves a better name.

My conclusion from the admitted facts of the complaint is, that relief in equity must be denied plaintiff, and that therefore the demurrer should be sustained.

The order appealed from should be reversed, with costs, and judgment for defendant ordered on the demurrer, with costs.

LARREMORE, J., concurred.

VAN HOESEN, J.—This is an action upon a contract made with an administrator. On such a contract, the administrator is liable personally, and not in his representative

character. An attempt is made, however, to hold the estate liable upon the contract by inserting in the complaint an allegation that the administrator is insolvent, and that he refused to collect money alleged to be coming to the estate, which refusal is said " to be in fraud of plaintiff's rights." Whether or not the refusal of the administrator to touch the money in question operates as a fraud upon the plaintiff, is a question of law, which does not arise in this case, because no facts are alleged that warrant the charge that the administrator is guilty of fraud in fact, or that make a case of constructive fraud. The averment of the pleader's conclusion, that an act in itself indifferent is fraudulent, amounts to nothing. The facts that constitute the fraud must be set out in the pleading. For aught that appears, the administrator may have the best of reasons for not touching the money. If that be so, of what avail is it to say that his refusal is fraudulent?

Again, the complaint alleges that the administrator has no assets in his hands. Why, then, should the plaintiff demand judgment and execution *de bonis intestati?* Is it with the hope of procuring the imprisonment of the defendant for a simple contract debt? Is it intended to insert in the decree an order that he collect the money, and in case of his refusal to charge him with a wilful refusal to comply with the judgment, and to have him adjudged guilty of contempt?

I concur with Judge J. F. DALY in reversing the judgment.

Judgment reversed, with costs, and judgment ordered for defendant on the demurrer, with costs.